**<u>APPENDIX C</u>**

Liquidation Analysis

**APPENDIX C**

## LIQUIDATION ANALYSIS

### Basis of Presentation

The Debtors have prepared this Liquidation Analysis (the "Liquidation Analysis") based on a hypothetical liquidation of the Debtors' assets under Chapter 7 of the Bankruptcy Code. It is assumed, among other things, that the hypothetical liquidation under Chapter 7 would commence under the direction of the Chapter 7 Trustee and would continue for a period of time, during which time all of the Debtors' major assets would be sold or surrendered to the respective lien holders, and the cash proceeds, net of liquidation-related costs, would then be distributed to creditors in accordance with the absolute priority rule.

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtors' assets in a Chapter 7 case is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation.

The Liquidation Analysis is a hypothetical exercise that has been prepared for the sole purpose of generating a reasonable good-faith estimate of the proceeds that would be realized if the Debtors were liquidated in accordance with Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is used to satisfy the "best interest of creditors" test set forth in Section 1129(a)(7) of the Bankruptcy Code, because it indicates whether the members of an impaired class that vote or are deemed to reject the Debtors' Plan will receive at least as much under the Plan as they would in a liquidation under a hypothetical Chapter 7 case.

THE LIQUIDATION ANALYSIS IS NOT INTENDED TO BE, AND SHOULD NOT BE, USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION. THIS ANALYSIS ASSUMES "LIQUIDATION VALUES" BASED ON APPRAISALS, WHERE AVAILABLE, AND THE DEBTORS' BUSINESS JUDGMENT, WHERE APPRAISALS ARE NOT AVAILABLE. THE DEBTORS BELIEVE THAT A CONVERSION OF THE CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 WOULD FORCE THE SHUTDOWN OF MOST OF THE DEBTORS' OPERATIONS. IT IS POSSIBLE THAT ONE OR MORE OF THE DEBTORS COULD BE SOLD ON A GOING CONCERN BASIS AND THAT PROCEEDS RECEIVED FROM SUCH GOING CONCERN SALE(S) WOULD BE MORE THAN IN THE HYPOTHETICAL LIQUIDATION. THE COSTS ASSOCIATED WITH SUCH GOING CONCERN SALE(S) WOULD BE LESS, FEWER CLAIMS WOULD BE ASSERTED AGAINST THE BANKRUPTCY ESTATES AND/OR CERTAIN ORDINARY COURSE CLAIMS WOULD BE ASSUMED BY THE BUYER(S) OF SUCH BUSINESS(ES); HOWEVER, THE DEBTORS DO NOT BELIEVE THIS IS A LIKELY RESULT.

The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. The Liquidation Analysis relies on certain independent appraisals that were prepared for purposes other than this Liquidation Analysis and that were prepared on dates prior to the date of this Liquidation Analysis. NEITHER THE DEBTORS NOR THEIR FINANCIAL ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.  This Liquidation Analysis assumes that a liquidation of the Debtors would occur over a period of approximately three to six months.  It is assumed that the Chapter 7 Trustee would arrange for the Debtors to terminate ongoing business operations almost immediately upon conversion of their cases to Chapter 7 and focus efforts to sell substantially all remaining assets in an orderly manner.

A general summary of the assumptions used by the Debtors in preparing this Liquidation Analysis follows. More specific assumptions are discussed in the Notes to Liquidation Analysis section.

### Important Considerations and Assumptions

1.  Dependence on Assumptions: The Liquidation Analysis is based on a number of estimates and assumptions that, although developed and considered reasonable by the management of and the advisors to the Debtors, are inherently subject to significant economic, business, regulatory, and competitive uncertainties and contingencies beyond the control of the Debtors or their management and advisors.  In addition, various liquidation decisions upon which certain assumptions are based are subject to change. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation, and actual results could vary materially and adversely from those contained herein.

2. Substantive Consolidation: The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administrated and substantively consolidated proceeding. In addition, the Debtors believe all of their material assets reside at those Debtors who are obligors or guarantors under the Existing First Lien Credit Agreement (primarily RHI LLC) and are thus encumbered, and that any immaterial assets, including a *de minimis* amount of cash at RHI INC, although potentially unencumbered, would be anticipated to be quickly consumed by Chapter 7 liquidation costs. As a result, a liquidation analysis on an entity-by-entity basis would not produce a meaningfully different result.

3. Liquidation Methodology: The Liquidation Analysis was prepared by the Debtors' management with assistance of the Debtors' professionals and assumes that the liquidation of the Debtors would occur pursuant to Chapter 7 of the Bankruptcy Code. It is assumed that the Bankruptcy Court would appoint a Chapter 7 Trustee to oversee the liquidation of the Debtors' assets. The liquidation is assumed to continue for a period of approximately three to six months, during which time all of the Debtors' major assets would either be sold or conveyed to the respective lien holders.

   The Liquidation Analysis assumes that there are no proceeds from the recoveries of any potential preferences, fraudulent conveyances, or other causes of action. It is assumed that any potential recovery on causes of action arising under Chapter 5 of the Bankruptcy Code would be immaterial to the results of the Liquidation Analysis.

4. Distribution of Net Proceeds: Under a Chapter 7 liquidation, all secured claims are required to be satisfied from the proceeds of the collateral securing such claims before any such proceeds can be distributed to junior creditors. Those proceeds, however, may be subject to the costs of the Chapter 7 proceeding pursuant to 11 U.S.C. § 506(c) or otherwise as agreed by the secured claimants or ordered by the Bankruptcy Court. Moreover, under the "absolute priority rule," no junior creditor classes may receive any distribution until all senior creditor classes are paid in full. This Liquidation Analysis assumes the application of such "absolute priority rule" to distributions with respect to the remaining proceeds of the Debtors, but also assumes that the proceeds of collateral are subject to the costs of the Chapter 7 proceeding pursuant to 11 U.S.C. § 506(c) or otherwise as agreed by the secured claimants or ordered by the Bankruptcy Court. Given such assumptions, to the extent that proceeds remain after satisfaction of the costs of the Chapter 7 proceeding and all secured claims, the proceeds would first be distributed to the holders of administrative claims of the Chapter 11 case, then to priority claims and finally to the unsecured claims. Based on the Debtors' analysis, all of the material assets of the Debtors represent collateral of pre-petition secured claimants. Any unencumbered assets, including a *de minimis* amount of cash at RHI INC (approximately $1,000 (one thousand dollars)), would be immaterial, and would be consumed by Chapter 7 liquidation costs before reaching any other creditors.

5. Additional Unsecured Claims: The cessation of business in a liquidation would trigger certain claims that otherwise would not exist under the Plan absent a liquidation. Examples of these kinds of claims include various potential employee claims (for items such as severance) and damages arising from the rejection of executory contracts and unexpired leases that would otherwise have been assumed under the Plan. Some of the employee-related claims might be entitled to priority in payment over general unsecured claims. To the extent proceeds remain after satisfying secured claims, any priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity interests. No attempt has been made to estimate other additional unsecured claims that may result from such events under a Chapter 7 liquidation scenario because no funds are estimated to be available to the general unsecured creditors of the Debtors.

6. Dependence on Unaudited Financial Statements: This Liquidation Analysis is based upon the Debtors' unaudited financial statements as of June 30, 2010, except where otherwise noted.

7. The Liquidation Analysis assumes a different treatment of claims than the treatment described in the Plan. Under the Liquidation Analysis, it is assumed that the proposed settlements between the Debtors and the holders of the Existing First Lien Claims, the holders of the Existing Second Lien Claims, the Guilds, and other secured and unsecured claim holders are not consummated, and all of the Debtors' major assets would either be sold or conveyed to the respective lien holders in a liquidation.

8. Chapter 7 Liquidation Costs and Length of Liquidation Process: The Debtors have assumed that all operations would cease immediately, and a limited group of personnel would be retained by the Chapter 7 Trustee in order to pursue orderly sales of substantially all of the remaining assets, collect receivables, arrange distributions, and otherwise administer and close the estates. Thus, this Liquidation Analysis assumes the liquidation would be completed in substance within six months (though administrative wrap-up costs regarding items such as tax reporting and employee benefit filings may reasonably extend beyond six months). In an actual liquidation, the wind down process and time period(s) could vary, thereby affecting recoveries. For example, if proceeds were available to distribute to unsecured creditors, the potential for priority, contingent and other claims, litigation, rejection damages, and the final determination of allowed claims could substantially impact both the timing and amount of the distribution of the asset proceeds to the creditors. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation.

Pursuant to Section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by the Chapter 7 Trustee, including but not limited to, expenses associated with selling the Debtors' assets, will be entitled to payment in full prior to any distribution to Chapter 11 administrative and other priority claims.

**AS DESCRIBED IN GREATER DETAIL IN THE INTRODUCTION TO THIS LIQUIDATION ANALYSIS, THE LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF GENERATING A REASONABLE GOOD-FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE WHEN COMPARED TO RECOVERIES UNDER THE PLAN.  THE LIQUIDATION ANALYSIS IS NOT INTENDED TO AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION.**

## Summary of Estimated Asset Liquidation Values
## Liquidation as of assumed effective date of the Plan
*($ in millions)*

| | Book Value (Unaudited) | Estimated % Recovery | | Estimated Liquidation Value | |
|---|---|---|---|---|---|
| | | Low | High | Low | High |
| **Estimated Assets to be Liquidated** | | | | | |
| Cash (A) | $7 | 100% | 100% | $7 | $7 |
| Trade Accounts Receivable, net (B) | 57 | 59% | 67% | 34 | 38 |
| Film Production Costs (C) | 458 | 20% | 30% | 92 | 137 |
| Prepaid and Other Assets (D) | 18 | 0% | 0% | 0 | 0 |
| **Total Assets** | **$539** | | | **$132** | **$182** |

## Liquidation Analysis Summary
## Liquidation as of assumed effective date of the Plan
*($ in millions)*

| | Estimated Claims | | Estimated % Recovery | | Estimated Recovery | |
|---|---|---|---|---|---|---|
| | Low | High | Low | High | Low | High |
| **Gross Proceeds Available for Prepetition Secured Claims** | | | | | $132 | $182 |
| **Less: Chapter 7 Administrative Claims** | | | | | | |
| Wind Down Costs (E) | | | | | ($7) | ($10) |
| Trustees Fees (F) | | | | | (4) | (5) |
| Professional Fees (G) | | | | | (3) | (5) |
| **Total Chapter 7 Administrative Claims** | | | | | **($14)** | **($20)** |
| **Net Proceeds Available for Prepetition Secured Claims** | | | | | **$118** | **$162** |
| **Less: Existing Secured Claims (H)** | | | | | | |
| Existing First Lien Claims | $566 | $566 | 21% | 28% | $116 | $159 |
| Estimated Secured Guilds Claims | 8 | 8 | 21% | 28% | 2 | 2 |
| **Total Existing Secured Claims** | **$574** | **$574** | **21%** | **28%** | **$118** | **$162** |
| **Net Proceeds Available for Ch. 11 Admin, Priority, Deficiency and General Unsecured Claims** | | | | | **$0** | **$0** |
| **Less: Chapter 11 Administrative Claims and Priority Claims** | | | | | | |
| Chapter 11 Administrative Claims | $4 | $5 | 0% | 0% | $0 | $0 |
| Estimated Priority Claims | 0 | 0 | 0% | 0% | 0 | 0 |
| **Total Chapter 11 Administrative Claims and Priority Claims** | **$4** | **$5** | **0%** | **0%** | **$0** | **$0** |
| **Net Proceeds Available for Deficiency and General Unsecured Claims** | | | | | **$0** | **$0** |
| **Less: Existing First Lien Deficiency Claims (I)** | | | | | | |
| Existing First Lien Deficiency Claims | $450 | $406 | 0% | 0% | $0 | $0 |
| Estimated Secured Guilds Deficiency Claims | 6 | 6 | 0% | 0% | 0 | 0 |
| **Total Existing First Lien Deficiency Claims** | **$456** | **$412** | **0%** | **0%** | **$0** | **$0** |
| **Less: Existing Second Lien Claims (I)** | **$82** | **$82** | **0%** | **0%** | **$0** | **$0** |
| **Less: Estimated General Unsecured Claims (I)** | | | | | | |
| Accounts Payable and Accrued Liabilities | 12 | 12 | 0% | 0% | 0 | 0 |
| Estimated Unsecured Guilds Claims | 11 | 11 | 0% | 0% | 0 | 0 |
| Estimated Other Unsecured Claims | 82 | 82 | 0% | 0% | 0 | 0 |
| **Total General Unsecured Claims** | **$105** | **$105** | **0%** | **0%** | **$0** | **$0** |
| **Total Deficiency and Unsecured Claims** | **$643** | **$599** | **0%** | **0%** | **$0** | **$0** |
| **Net Proceeds Available After Payments to Deficiency Claimants and Unsecured Creditors** | | | | | **$0** | **$0** |

4

**Notes to Liquidation Analysis**

*Note A – Cash and Equivalents*

Cash and equivalents are projected to liquidate at 100% of book value.  The Liquidation Analysis assumes projected cash and equivalents balance of approximately $7 million as of October 29, 2010.

*Note B – Trade Accounts Receivable, net*

The analysis of accounts receivable assumes that a Chapter 7 Trustee would retain certain existing staff of the Debtors to handle an aggressive collection effort for outstanding trade accounts receivable.  Collections during a liquidation of the Debtors may be significantly compromised as customers may attempt to set off outstanding amounts owed to the Debtors against alleged damage and breach of contract claims.  Estimated recoveries are from 59% to 67% of the book value of receivables.  In determining the recovery, the Company reviewed the aging of accounts, customers with large amounts outstanding, international customers, customers with large amounts past due, historically slow-paying customers and also adjusted the recovery for the expectation of attempts to set off.  The estimate also considers the inevitable difficulty that a liquidating company has in collecting its receivables and any concessions that might be required to facilitate the collection of certain accounts.

*Note C – Film Production Costs, net (Library liquidation)*

The Liquidation Analysis assumes that the film library would be liquidated through an expedited sale, or distressed sale, which would most likely maximize the value of the library in a liquidation.  The distressed sale process is assumed to be conducted over a three to six-month period.  Due to a number of factors including (a) the expedited nature of the sale process, (b) the potential deterioration of the business during the Chapter 7 liquidation, (c) the "as is" nature of the asset sales given the limited ability of the Chapter 7 Trustee to provide representations, warranties and indemnifications, (d) the sale of a film library without corresponding production capabilities, and (e) the number of titles to be sold at a single time, the Debtors' management and advisors believe that it is appropriate to estimate the potential value of the library in a liquidation at 20% to 30% of its book value.

*Note D – Prepaid and Other Assets*

Prepaid and other assets primarily consist of deferred financing costs and also include small amounts for property and equipment (including leasehold improvements, furniture and fixtures and computers and other equipment owned by the Debtors), miscellaneous receivables and other assets.  The assumed recovery rates on these assets were derived from management estimates and were assumed to have no value in a liquidation.

*Note E – Wind Down Costs*

Wind down costs during the liquidation are assumed to include corporate payroll, severance and retention costs for continuing corporate staff, occupancy costs and other general administrative expenses.

Corporate payroll, severance and retention costs, occupancy costs and other general administrative expenses costs during the liquidation are based upon the assumption that the Chapter 7 Trustee would need to maintain a reduced corporate staff to oversee the liquidation process, including the sale of the library, collection of outstanding accounts receivables, administration of claims, closing of the accounting records and other administrative tasks.  These costs are estimated to range from approximately $7 million to $10 million.

*Note F – Chapter 7 Trustee Costs*

Chapter 7 Trustee costs include fees associated with the appointment of a Chapter 7 Trustee in accordance with Section 326 of the Bankruptcy Code which provides for statutory Chapter 7 Trustee fee of 3% for liquidation proceeds in excess of $1 million.  Chapter 7 Trustee fees are estimated to range from approximately $4 million to $5 million.

*Note G – Professional Fees*

The Debtors assume that the Chapter 7 Trustee would pay approximately $1.0 million per month over the liquidation period for legal, advisory and consulting fees.  These costs are estimated to range from approximately $3 million to $5 million.

*Note H – Secured Claims*

Secured claims are estimated at $574 million and consist of approximately $566 million of Existing First Lien Claims and approximately $8 million of estimated allowed amounts for the secured obligations of the Guilds, each limited to the extent of the value of their collateral.  Existing First Lien Claims are assumed to include approximately $361 million drawn under the revolving credit facility (including an assumption that a $3.4 million letter of credit would be drawn), a $184 million term loan, a $21 million swap liability and estimated accrued interest on all Existing First Lien Claims through October 31, 2010.  The Guilds have aggregate

claims of approximately $18 million.  A portion of those claims are secured by lien filings; some of the resulting liens are senior to the liens securing the Existing First Lien Claims while others are junior.  For purposes of this Liquidation Analysis only, and without prejudice to any contrary position taken by the Debtors, the holders of Existing First Lien Claims in the Chapter 11 Case or the Guilds, it is assumed that the Guilds have senior liens with respect to $8 million of their aggregate claims (the "Estimated Secured Guilds Claims" above).  The balance of the Guilds' claims is unsecured (the "Estimated Unsecured Guild Claims" above).  The allocation of net proceeds between the Existing First Lien Claims and the Estimated Secured Guilds Claims is done on a pro rata basis for illustrative purposes, to show the use of net proceeds.  In reality, the holders of such Claims would each have first rights to the net proceeds of the collateral against which they hold senior liens, so their respective recoveries would be different, but the aggregate use of net proceeds should not be.

*Note I – Unsecured Claims*

For purposes of the Liquidation Analysis, the Unsecured Claims consist of the Existing First Lien Deficiency Claims, the estimated deficiency claims of the Guilds (the "Estimated Secured Guilds Deficiency Claims"), the Existing Second Lien Claims, the Estimated Unsecured Guild Claims, the General Unsecured Claims and potential other unsecured claims assumed to exist in a liquidation.  For purposes of the Liquidation Analysis, it was assumed that all estimated Production Loan Film Obligations are unsecured obligations.  The Liquidation Analysis does not attempt to estimate the potential additional General Unsecured Claims that would likely arise as a result of the rejection of remaining executory contracts and leases and the failure of the Debtors to perform under existing contracts with their customers and the Guilds.  Such additional claims would likely result from a cessation of operations as contemplated herein and would likely be substantial in amount.  General Unsecured Claims are assumed to be paid on a pro rata basis from the net liquidation proceeds available, if any, after the payment of all other Claims.