**EXHIBIT F**

**TO**

**JOINT PREPACKAGED PLAN OF REORGANIZATION OF
RHI ENTERTAINMENT, INC. AND AFFILIATED DEBTORS**

**EXHIBIT F**

**TO**

**JOINT PREPACKAGED PLAN OF REORGANIZATION OF
RHI ENTERTAINMENT, INC. AND AFFILIATED DEBTORS**

**New Warrants Term Sheet**

| | |
|---|---|
| *Issuer:* | RHI Entertainment, Inc. (the "Company"). |
| *Holders:* | Second Lien Lenders (each, a "Holder"). |
| *Ownership Percentage:* | New Warrants (the "Warrants") collectively representing 15% ownership of the Company on a fully-diluted basis, as of the Effective Date, determined after taking into account the full dilution attributable to New Management Incentive Plan and the exercise of the Warrants. |
| *Closing:* | Effective Date. |
| *Exercise Period of Warrants:* | Exercisable at any time, in whole or in part, prior to the earlier of (1) the 7th anniversary of the Effective Date and (2) the time of closing of a sale of all or substantially all of the equity securities of the Company (other than equity securities issued to management under the New Management Incentive Plan) to a third party purchaser (provided that the Holders shall be provided reasonable advance notice of such sale and shall have the right to either (i) exercise the Warrants (including in the cashless exercise described below) prior to the consummation of such sale or (ii) sell the Warrants in such sale for the "in the money" value of such Warrants (with such "in the money" value determined in accordance with the valuation procedures described for a cashless exercise below). |
| *Exercise Price of Warrants:* | The exercise price of the Warrants shall be based upon an equity value of the common stock of the Company that is issued to the First Lien Lenders on the Effective Date being equal to 100% of the full amount of the allowed claim in respect of the Existing First Lien Claims.  Equity value shall be determined after taking into account all new debt issued to the holders of Existing First Lien Claims in connection with the Effective Date.<br><br>The Warrants will include a "cashless exercise" option.  For purposes of a cashless exercise or a sale of the Warrant (as discussed above), the value of the underlying shares shall be determined as follows: (a)  in connection with a sale of the Company where the purchase price for the Company's securities is payable in cash or in securities that are publicly traded, the value of the underlying shares shall equal the value of the consideration payable for each share, (b) if the Company's securities are publicly traded, the five-day average of the closing price for such shares prior to the applicable date of determination, or (c) in all other events the value shall be determined in good faith by (or in a manner determined by) the New Board; provided that if the Holders of a majority of shares of common equity of the Company issued or issuable upon exercise of the Warrants (the "Required Holders") disagree with New Board's valuation, the value shall be determined by an independent arbitrator mutually selected by the Company and the Required Holders (with the Holders paying for the costs of such independent arbitrator unless the value determined by such independent arbitrator is at least 110% of the value |

| | |
|---|---|
| | determined by the Company). |
| ***Put Rights:*** | None. |
| ***Special Consent Rights:*** | Consent of the Required Holders shall be required for the following actions by the Company or any of its subsidiaries: |
| | (i)     Amend the Certificate of Incorporation or By-Laws of the Company or any of its subsidiaries in a manner materially adverse to the Holders disproportionately to the holders of the Company's common stock; |
| | (ii)    Adversely alter any of the rights, preferences, privileges or powers of, or the restrictions provided for the benefit of, the Holders; |
| | (iii)   Agree or commit to do any of the foregoing. |
| | Consent of the Required Holders would be required to amend, modify or terminate any of the foregoing protective provisions. |
| | In addition, entry into or modification of any transaction with an Affiliate (defined below) of the Company will require the approval of the holders of a majority of the outstanding common stock of the Company (including the Holders voting on an as exercised basis); provided, that the transactions with Affiliates (i) involving monetary consideration of under $100,000 or (ii) which are entered into in the ordinary course of business of the Affiliate (e.g., in the case of any Affiliate which is a financial institution, depository or other banking arrangements, interest rate swap or other hedging arrangements, transactions involving performance under, amendments to or refinancings of the financing facilities being implemented on the Effective Date or any refinancing or restructuring thereof, and in the case of any Affiliate which is a film distributor or channel operator, the ordering of film product or other customary license arrangements) and on normal business terms, shall in each case not require a shareholder/Holder vote. |
| | "Affiliate" means, with respect to any specified Person at any time means, (a) each Person directly or indirectly controlling, controlled by or under direct or indirect common control with such specified Person at such time, with "control" defined as the possession of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise, (b) each Person who is at such time a direct or indirect beneficial holder of at least 15% of the voting equity interests such specified Person (excluding the Warrants) on a fully-diluted basis, (c) each Person that is managed by a majority of the executive officers and/or a majority of the directors that manage such specified Person, (d) the members of the immediate family of each holder described in clause (b), and (e) each Person of which such specified Person or an Affiliate (as defined in clauses (a) through (d)) thereof will, directly or indirectly, beneficially own at least 15% of the voting equity interests of, such Person (excluding the Warrants) on a fully- diluted basis.  For purposes hereof, so long as they shall hold any equity interests of the Company, JPMorgan Chase Bank, N.A. and JPM Mezzanine Capital, LLC shall not be considered to be under "common control" or under common management. |
| ***Future Grants of Rights to Stockholders:*** | In the event that the Company provides all of the holders of the common stock of the Company:  (a) a preemptive right, a participation right, or other similar right to purchase a pro rata share of any offering by the Company of equity securities, or any securities convertible into or exercisable for equity securities, (b) a tag-along or co-sale right or similar right with respect to the sale or transfer of any equity securities or any securities |

| | |
|---|---|
| | convertible into or exercisable for equity securities, (c) a put or call right with respect to the purchase of any equity securities, or any securities convertible into or exercisable for equity securities or (d) anti-dilution protection, then in each case the Company shall be required to provide contemporaneously to the Holders the same rights on the same terms with respect to both (i) the Warrants and (ii) the common stock that is being issued to the holders of Existing Second Lien Claims on the Effective Date. |
| *Registration Rights:* | *Demand Registrations.*  None.<br><br>*Piggyback Registration Rights.*  The Holders will be entitled to piggyback registration rights with respect to the shares of common stock underlying the warrants.<br><br>*Expenses.*  Expenses of piggyback registrations will be paid by the Company (other than underwriting discounts and selling commissions), including without limitation for one legal counsel for all selling holders. |
| *Anti-Dilution:* | The exercise price of the Warrants and/or number of common equity securities issuable upon exercise of the Warrants will be subject to adjustment to account for any stock splits, stock dividends and similar events.<br><br>In the event that the Company provides anti-dilution protection to all of the holders of at least 2.5% of the outstanding shares of common stock of the Company, the Company shall be required to provide contemporaneously to the Holders the same protections on the same terms. |
| *Dividends:* | Upon any declaration or payment of cash dividends on common equity, the holders shall not be entitled to any payment in connection therewith, and the exercise price of the Warrants shall be unaffected. |
| *Tag Along Rights:* | None. |
| *Transfer Rights:* | Freely transferable subject to applicable securities laws; provided that no transfer will be permitted unless either (a) a single transferee is receiving the entirety of the Warrant and any other Warrants held by the transferring Holder, (b) a single transferee is receiving an entitlement to purchase at least a number of shares of common stock equal to 20% of the number of shares of common stock into which all Warrants issued pursuant to the Plan are convertible (after giving effect to all applicable anti-dilution provisions and assuming that no Warrants have been exercised or terminated as a result of their acquisition by the Company) or (c) the transferee is already a holder of common stock of the Company or Warrants.  Transfers that are not in accordance with the foregoing shall be null and void *ab initio*. |
| *Information Rights:* | The financial information and reasonable inspection rights provided to lenders under the senior credit facility post-Reorganization will be available for each Holder so long as any Warrant or underlying common equity is outstanding.  In the event that RHI Entertainment and its affiliates are not required to provide any financial information to their lenders, such holders will be entitled to receive quarterly financial reports. |
| *Governing Law:* | New York. |