**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| RHI Entertainment, Inc. <u>et al.</u>,[1] | ) | Case No. 10-16536 (SMB) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |
| | ) | |

**FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-
PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) TO UTILIZE
CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND
(II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION
SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364**

RHI Entertainment, Inc. ("<u>RHI</u>"), RHI Entertainment, LLC (the "<u>Borrower</u>"), RHI

Entertainment Holdings II, LLC (the "<u>Borrower Parent</u>") and certain of their subsidiaries, each

as a debtor and debtor-in-possession (collectively, the "<u>Debtors</u>") in the above-captioned cases

(the "<u>Cases</u>"), pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3),

364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the

"<u>Bankruptcy Code</u>"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "<u>Bankruptcy Rules</u>"), and the Local Bankruptcy Rules for the Southern District of New

York (the "<u>Local Rules</u>"), having moved on December 10, 2010 (the "<u>Motion</u>") for an order

authorizing the Debtors to, *inter alia*, use collateral, including cash collateral, in which certain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: RHI Entertainment, Inc. (4616); RHIE Holdings Inc. (5429); RHI Entertainment Holdings II, LLC (0004); RHI Entertainment, LLC (7887); RHI Entertainment Productions, LLC (6014); RHI Entertainment Distribution, LLC (6017) ("<u>RHI Distribution</u>"); RHI International Distribution Inc. (7653); NGP Holding, Inc. (6138); HEGOA Inc. (4608); Independent Projects, Inc. (2430); Don Quixote, Inc. (1238); HE PRO Tunes, Inc. (2268); HEP Music, Inc. (2267); Metropolitan Productions, Inc. (9375); Library Storage, Inc. (8155); HEP SS Music Inc. (7969); and SLB Productions, Inc. (8171).

pre-petition secured parties have an interest, to incur post-petition secured indebtedness, and to grant security interests and superpriority claims, all as described more fully in the Motion, and seeking, among other things:

(1)     authorization for the Borrower to obtain post-petition financing (the "DIP Facility"), and for the Borrower Parent and each subsidiary of the Borrower that is party to the DIP Credit Agreement (as defined below) (together with the Borrower Parent, each a "Guarantor" and collectively, the "Guarantors") to guaranty the Borrower's obligations in connection with the DIP Facility, up to the aggregate principal amount of $15 million, including a $2.5 million letter of credit sub-facility (the actual available principal amount at any time being subject to those conditions set forth in the DIP Documents (as defined below)), from a syndicate of financial institutions with JPMorgan Chase Bank, N.A. ("JPMCB"), acting as administrative agent (in such capacity, the "DIP Agent"), for itself and the other members of such syndicate (collectively, including JPMCB, the "DIP Lenders") to be arranged by J.P.Morgan Securities Inc. ("JPMorgan");

(2)     authorization for the Debtors to execute and enter into the Debtor-in-Possession Credit, Security, Guaranty and Pledge Agreement, substantially in the form annexed as Exhibit B to the Motion (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement") and the other Fundamental Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto (as the same may be amended, restated, supplemented or otherwise modified from time to time, collectively, the

"DIP Documents"), and to perform such other and further acts as may be required in connection with the DIP Documents;

(3)     the granting of adequate protection to the pre-petition secured parties (as of December 10, 2010 (the "Petition Date")) under or in connection with the following facilities and/or creditors whose liens are being primed by the DIP Liens (as defined below): (x) that certain Credit, Security, Guaranty and Pledge Agreement, dated as of January 12, 2006 (as amended and restated as of April 13, 2007, and as further amended, restated, supplemented or otherwise modified on or prior to the Petition Date, the "Pre-Petition First Priority Credit Agreement"), among the Borrower Parent, the Borrower, the subsidiaries of the Borrower party thereto as guarantors (collectively, the "Pre-Petition Guarantors"), the lenders party thereto (such lenders, collectively, the "Pre-Petition First Priority Lenders"), JPMCB, as issuing bank (in such capacity, the "Pre-Petition Issuing Bank"), and JPMCB, as administrative agent and collateral agent (in such agent capacities, the "Pre-Petition First Priority Agent"), it being understood that the security interests held by the Pre-Petition First Priority Agent are held for the benefit of the Pre-Petition First Priority Lenders, the Pre-Petition Issuing Bank and the counterparties under the following Swap Agreements (as defined in the Pre-Petition First Priority Credit Agreement), each dated April 21, 2009, between the Borrower on the one hand and the following respective counterparties (each of which is also a Pre-Petition First Priority Lender): (I) JPMorgan Chase Bank, N.A. (swap identification number 6900149180290), (II) Bank of America (swap identification number 53603426) and (III) The Royal Bank of Scotland PLC

(swap identification number D16256046) (such counterparties in such capacity collectively, the "Pre-Petition Swap Counterparties"; the Pre-Petition Swap Counterparties, the Pre-Petition First Priority Lenders and the Pre-Petition First Priority Agent are referred to collectively herein as the "Pre-Petition First Priority Creditors") (such swap agreements collectively, the "Pre-Petition Swap Agreements" and, together with the Pre-Petition First Priority Credit Agreement and all other documents and agreements related thereto or executed in connection therewith, including, but not limited to, the Forbearance Agreement dated as of December 23, 2009 among the Borrower, the Borrower Parent, the Pre-Petition Guarantors and the Pre-Petition First Priority Creditors, each as amended, restated, supplemented or otherwise modified from time to time on or prior to the Petition Date, collectively, the "Pre-Petition First Priority Documents"); (y) that certain Credit, Security, Guaranty and Pledge Agreement, dated as of June 23, 2008 (as amended, restated, supplemented or otherwise modified on or prior to the Petition Date, the "Pre-Petition Second Priority Credit Agreement"), among the Borrower Parent, the Borrower, the Pre-Petition Guarantors, and the lenders party thereto (such lenders collectively, the "Pre-Petition Second Priority Lenders") and Wilmington Trust FSB (as successor to JPMCB) as administrative agent and collateral agent (in such capacities, the "Pre-Petition Second Priority Agent" and, together with the Pre-Petition Second Priority Lenders, the "Pre-Petition Second Priority Creditors") (the Pre-Petition Second Priority Credit Agreement, together with all other documents and agreements related thereto or executed in connection therewith, including, but not limited to, the Forbearance

Agreement, dated as of February 12, 2010, among the Borrower, the Borrower Parent, the Pre-Petition Guarantors and the Pre-Petition Second Priority Creditors, as amended on or prior to the Petition Date, are referred to collectively herein as the "Pre-Petition Second Priority Documents;" and the Pre-Petition First Priority Documents, the Pre-Petition Second Priority Documents and that certain Replacement Amended and Restated Intercreditor Agreement, dated as of June 23, 2008 (as amended, restated, supplemented or otherwise modified on or prior to the Petition Date, the "Credit Facilities Intercreditor Agreement"), among the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, the Borrower Parent, the Borrower and the Pre-Petition Guarantors, are referred to collectively herein as the "Existing Loan Agreements"); and (z) commitments made or assumed by the Debtors to the Screen Actors' Guild, Inc., the Writers' Guild of America West, Inc., for itself and on behalf of its affiliate, the Writers' Guild of America East, Inc., and the Directors' Guild of America, Inc (each, a "Guild" and collectively, the "Guilds" and, together with the Pre-Petition First Priority Creditors and the Pre-Petition Second Priority Creditors, the "Pre-Petition Secured Parties"; it being understood that each Guild shall constitute a Pre-Petition Secured Party solely on an uncrossed, single-picture, Picture-by-Picture basis) with respect to obligations under certain collective bargaining agreements, including, without limitation, residual payment obligations (solely on an uncrossed, single-Picture, Picture-by-Picture and Guild-by-Guild basis) with respect to made-for-TV movies or miniseries produced, owned or distributed by

the Debtors (each, a "<u>Picture</u>") to the extent such Pictures are subject to a "Pre-Petition Senior Guild Lien" or a "Pre-Petition Junior Guild Lien".

(4)     authorization for the Debtors to use Cash Collateral (as defined below), subject to the limitations set forth in this Order, in which the Pre-Petition Secured Parties have an interest, and the granting of adequate protection to the Pre-Petition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and all use of and diminution in the value of the Pre-Petition Collateral (as defined below);

(5)     authorization for the DIP Agent to accelerate the DIP Loans (as defined below) and to terminate the Commitments (as defined below) (subject to the terms of the DIP Documents and this Order) upon the occurrence and during the continuance of an Order Event of Default (as defined below), including without limitation, upon the entry of a final order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code in respect to assets having a value in excess of $500,000;

(6)     the granting of liens and superpriority claims to the DIP Lenders payable from, and having recourse to, all pre-petition and post-petition property of the Debtors' estates and all proceeds thereof, including any Avoiding Proceeds (as defined below), subject only to the Carve Out (as defined below) and Prior Liens (as defined below), which Carve Out shall have separate allowances for the fees and expenses of professionals retained by any Statutory Committee (as defined below) and the Debtors;

(7)     pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion before this Court to consider entry of an interim order (the "Interim Order"): (a) authorizing the Borrower and other Debtors, on an interim basis, to execute the DIP Documents in connection with the DIP Facility and to borrow from the DIP Lenders under the DIP Documents up to an aggregate principal amount not to exceed $7.5 million (i) for working capital and other general corporate purposes of the Debtors, including, without limitation, for letters of credit up to $2.5 million (subject to any limitations on borrowings and the use of proceeds thereof under the DIP Documents) and (ii) to pay costs and expenses in connection with the DIP Documents and the Cases, including but not limited to any and all fees to be paid upon the Effective Date (as defined in the DIP Credit Agreement) under the DIP Documents, (b) authorizing the Debtors' use of Cash Collateral and the other Collateral of the Pre-Petition Secured Parties subject to the limitations set forth in this Order, and (c) granting the Pre-Petition Secured Parties the adequate protection described herein; and

(8)     a final hearing (the "Final Hearing") to consider entry of this final order (the "Order") authorizing and approving on a final basis the relief requested in the Motion, including, without limitation, authorizing the balance of the borrowings under the DIP Documents, as set forth in the Motion and the DIP Documents filed with this Court, and authorizing the Debtors to (x) waive the right to surcharge, pursuant to section 506 of the Bankruptcy Code, any costs of administration of these Cases (except for the Carve Out) against any Pre-Petition Collateral and Collateral (as defined below) and (y) borrow from the DIP Lenders

under the DIP Documents up to an aggregate principal amount not to exceed $15 million (inclusive of amounts authorized pursuant to the Interim Order), including a $2.5 million letter of credit sub-facility, under the DIP Facility which shall be used for the purposes permitted under the DIP Documents, including, without limitation, for working capital and other general corporate purposes of the Debtors (subject to limitations on borrowings and the use of proceeds thereof under the DIP Documents).

Due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on the twenty largest unsecured creditors of the Debtors on a consolidated basis, the respective counsel for the DIP Agent, the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, and the Guilds, and the United States Trustee for the Southern District of New York, all as more fully set forth in the Motion.

The Interim Hearing having been held before this Court on December 14, 2010.

The Final Hearing having been held before this Court on January 11, 2011 and the Interim Order having been entered on December 15, 2010.

Upon the record made by the Debtors at the Interim Hearing and the Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Jurisdiction.* This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has yet been appointed in these Cases.

2.		*Notice.* Under the circumstances, the notice given by the Debtors of the Motion, the Interim Hearing and the Final Hearing, as set forth in the affidavits of service filed as Docket Nos. 37, 39 and 112, constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b) and 4001(c) and the Local Rules.

3.		*Debtors' Stipulations.* Without prejudice to the rights of any Statutory Committee (as defined below) or any other party-in-interest authorized to assert any claims on behalf of the estates (but subject to the limitations thereon contained in paragraph 14 below), the Debtors admit, stipulate and agree that:

(a)		(i) as of the Petition Date, the Borrower, the Borrower Parent and the Pre-Petition Guarantors party to the Existing Agreements (as defined below) were indebted and liable: (x) to the Pre-Petition First Priority Creditors, without defense, counterclaim or offset of any kind, (1) in the aggregate principal amount of not less than $514,588,646.71 in respect of loans made by the Pre-Petition First Priority Lenders under the Pre-Petition First Priority Credit Agreement, (2) $3,384,990.00 in undrawn available amounts under letters of credit issued pursuant to the Pre-Petition First Priority Credit Agreement for which the Pre-Petition Issuing Bank and Pre-Petition First Priority Lenders have credit exposure, (3) $19,582,558.00 owed to the Pre-Petition Swap Counterparties under the Pre-Petition Swap Agreements (which were terminated prior to the Petition Date), and (4) $31,677,848.41 owed to the Pre-Petition First Priority Creditors on account of interest, fees (including letter of credit fees) and expenses (including attorneys', accountants', appraisers' and financial advisors' fees) accrued as of the Petition Date, in each case, pursuant to, and in accordance with the terms of, the Pre-Petition

First Priority Documents, plus all other Obligations (as defined in the Pre-Petition First Priority Credit Agreement) owed to the Pre-Petition First Priority Creditors, including, in each case, interest thereon and fees, expenses (including any reasonable attorneys', accountants', appraisers' and financial advisors' fees that are chargeable to or reimbursable by the Debtors under the Pre-Petition First Priority Credit Agreement) accrued after the Petition Date, and other obligations incurred in connection therewith as provided in the Pre-Petition First Priority Documents (collectively, the "Pre-Petition First Priority Secured Debt"), (y) to the Pre-Petition Second Priority Creditors, without defense, counterclaim or offset of any kind, in the aggregate principal amount of $75,000,000 in respect of loans made by the Pre-Petition Second Priority Lenders pursuant to, and in accordance with the terms of, the Pre-Petition Second Priority Documents, plus all other Obligations (as defined in the Pre-Petition Second Priority Credit Agreement) owed to the Pre-Petition Second Priority Creditors, including, in each case, interest thereon and fees, expenses (including any reasonable attorneys', accountants', appraisers' and financial advisors' fees that are chargeable to or reimbursable by the Debtors under the Pre-Petition Second Priority Credit Agreement), and other obligations incurred in connection therewith as provided in the Pre-Petition Second Priority Documents (collectively, the "Pre-Petition Second Priority Secured Debt" and together with the Pre-Petition First Priority Secured Debt, the "Pre-Petition Secured Debt") and (z) (1) to the Guilds, without defense, counterclaim or offset of any kind (except to the extent any Guild holds a reserve provided by a producer for residual payments) for certain claims which are secured by perfected security interests and liens in and to certain Pictures (on an uncrossed, Picture-by-Picture and Guild-by-Guild basis) which security interests and liens are senior in priority to the security interests and liens of the Pre-Petition First Priority Creditors and the Pre-Petition Second Priority Creditors (the "Pre-Petition

Senior Secured Guilds," and any documentation executed or delivered in connection with such pre-petition senior Guild claims and security interests, the "Pre-Petition Senior Guild Documents") and (2) to the Guilds, without defense, counterclaim or offset of any kind (except to the extent any Guild holds a reserve provided by a producer for residual payments) for certain claims which are secured by perfected security interests and liens in and to certain Pictures (solely on an uncrossed, single picture, Picture-by-Picture and Guild-by-Guild basis) which security interests and liens are junior in priority to the security interests and liens of the Pre-Petition First Priority Creditors and the Pre-Petition Second Priority Creditors (any documentation executed or delivered in connection with such junior pre-petition Guild claims and security interests, the "Pre-Petition Junior Guild Documents" and, together with the Existing Loan Agreements and the Pre-Petition Senior Guild Documents, the "Existing Agreements"), (ii) the Pre-Petition Secured Debt constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (iii) no portion of the Pre-Petition Secured Debt is subject to avoidance, recharacterization, recovery or (except as provided in the Credit Facilities Intercreditor Agreement and in this Order) subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iv) the total residual and fringe benefit obligations of the Debtors to the Guilds regardless of perfection or priority is approximately $19,939,374 (subject to agreed adjustments and exclusive of residual and fringe benefit amounts identified for third party payments) under the Guild Settlement Agreement (defined below) (the "Pre-Petition Guild Claims") and such Pre-Petition Guild Claims constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code, except as qualified by sections

DB1/66228078.1
NY\1749222.4

1113 and 1114 of the Bankruptcy Code), but in the absence of the Guild Settlement Agreement would likely be asserted by the Guilds to be approximately $30,264,568 with respect to residuals (inclusive of residual amounts identified for third party payment under the settlement), plus applicable fringe benefits and accruing interest under each collective bargaining agreement; and

(b)           (i) the liens and security interests granted by one or more of the Debtors to the Pre-Petition First Priority Agent for its benefit and for the benefit of the other Pre-Petition First Priority Creditors pursuant to and in connection with the Pre-Petition First Priority Documents (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of and for the benefit of the Pre-Petition First Priority Agent and the other Pre-Petition First Priority Creditors) (the "Pre-Petition First Priority Liens") are (A) valid, binding, perfected, enforceable, first-priority liens and security interests in substantially all of the assets of the Debtors, as further described in the Pre-Petition First Priority Documents (including the set off rights described in the Pre-Petition First Priority Documents or arising by operation of law, collectively, the "Pre-Petition First Priority Collateral"), (B) not subject to avoidance, recharacterization or (prior to giving effect to this Order or as otherwise described herein) subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, (C) pursuant to and on the terms set forth in the Credit Facilities Intercreditor Agreement, senior to the Second Priority Pre-Petition Liens (as defined below), and (D) after giving effect to this Order, subject and subordinate only to (1) the DIP Liens (as defined below), (2) the Carve Out (as defined below), (3) the Pre-Petition Senior Guild Liens (as defined below), solely on an uncrossed, single-Picture, Picture-by-Picture and Guild-by-Guild basis on the applicable Pre-Petition Senior Guild Collateral (as defined below), (4) the Senior Guild Adequate Protection Liens (as defined

DB1/66228078.1
NY\1749222.4

below) (solely on an uncrossed, single-Picture, Picture-by-Picture and Guild-by-Guild basis) on the applicable Pre-Petition Senior Guild Collateral, and (5) valid, perfected and unavoidable liens permitted under the Pre-Petition First Priority Documents to the extent such permitted liens are senior to or *pari passu* with the Pre-Petition First Priority Liens on the Pre-Petition First Priority Collateral under applicable non-bankruptcy law; (ii) the liens and security interests granted by one or more of the Debtors to the Pre-Petition Second Priority Agent on behalf of the Pre-Petition Second Priority Secured Lenders pursuant to and in connection with the Pre-Petition Second Priority Documents (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of and for the benefit of the Pre-Petition Second Priority Agent and the other Pre-Petition Second Priority Secured Creditors) (the "Pre-Petition Second Priority Liens") are (A) valid, binding, perfected, enforceable liens and security interests in substantially all of the assets of the Debtors, as further described in the Pre-Petition Second Priority Documents (including any set off rights described in the Pre-Petition Second Priority Documents or arising by operation of law, collectively, the "Pre-Petition Second Priority Collateral"), (B) not subject to avoidance, recharacterization or (prior to giving effect to this Order or as otherwise described herein) subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (C) pursuant to and on the terms set forth in the Credit Facilities Intercreditor Agreement, junior to the Pre-Petition First Priority Liens, and (D) after giving effect to this Order, subject and subordinate only to (1) the DIP Liens, (2) the Carve Out, (3) the Pre-Petition Senior Guild Liens (solely on an uncrossed, single-Picture, Picture-by-Picture and Guild-by-Guild basis) on the applicable Pre-Petition Senior Guild Collateral, (4) the Senior Guild Adequate Protection Liens (solely on an uncrossed, single-Picture, Picture-by-Picture and Guild-by-Guild basis) on the

applicable Pre-Petition Senior Guild Collateral, (5) the Pre-Petition First Priority Liens, (6) the First Priority Adequate Protection Liens (as defined below), and (7) valid, perfected and unavoidable liens permitted under the Pre-Petition Second Priority Documents to the extent such permitted liens are senior to or *pari passu* with the Pre-Petition Second Priority Liens on the Pre-Petition Second Priority Collateral under applicable non-bankruptcy law; (iii) the liens and security interests granted by one or more of the Debtors to Guilds holding senior Pre-Petition Guild Claims in connection with commitments made or assumed by the Debtors to such Guilds with respect to residual payment obligations which constitute senior Pre-Petition Guild Claims (solely on an uncrossed, single-Picture, Picture-by-Picture and Guild-by-Guild basis) with respect to certain Pictures (the "Pre-Petition Senior Guild Liens") are each a (A) valid, binding, perfected, enforceable lien and security interest in the applicable Debtor's rights in the applicable Pictures and the proceeds thereof (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis) (collectively, the "Pre-Petition Senior Guild Collateral"), (B) not subject to avoidance, recharacterization or (prior to giving effect to this Order or otherwise described herein) subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (C) after giving effect to this Order, subject and subordinate only to (1) the DIP Liens, (2) the Carve Out, and (3) valid, perfected and unavoidable liens which are senior to or *pari passu* with the Pre-Petition Senior Guild Liens on the Pre-Petition Senior Guild Collateral under applicable non-bankruptcy law; and (iv) the liens and security interests granted by one or more of the Debtors to Guilds holding junior Pre-Petition Guild Claims in connection with commitments made or assumed by the Debtors to such Guilds with respect to residual payment obligations which constitute junior Pre-Petition Guild Claims (solely on an uncrossed, single-Picture, Picture-by-Picture and Guild-by-Guild basis) with respect to certain Pictures (the "Pre-Petition

Junior Guild Liens") are each a (A) valid, binding, perfected, enforceable lien and security interest in the applicable Debtor's rights in the applicable Pictures and the proceeds thereof (solely on an uncrossed, single-Picture, Picture-by-Picture and Guild-by-Guild basis) (collectively, the "Pre-Petition Junior Guild Collateral" and, together with the Pre-Petition Senior Guild Collateral, the "Pre-Petition Guild Collateral" and, together with the Pre-Petition First Priority Collateral and the Pre-Petition Second Priority Collateral, the "Pre-Petition Collateral") (B) not subject to avoidance, recharacterization or (prior to giving effect to this Order or otherwise described herein) subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (C) after giving effect to this Order, subject and subordinate only to (1) the DIP Liens, (2) the Carve Out, (3) the Pre-Petition Senior Guild Liens (solely on an uncrossed, single-Picture, Picture-by-Picture and Guild-by-Guild basis) on the applicable Pre-Petition Senior Guild Collateral, (4) the Senior Guild Adequate Protection Liens (solely on an uncrossed, single-Picture, Picture-by-Picture and Guild-by-Guild basis) on the applicable Pre-Petition Senior Guild Collateral, (5) the Pre-Petition First Priority Liens, (6) the First Priority Adequate Protection Liens, (7) the Pre-Petition Second Priority Liens, (8) the Second Priority Adequate Protection Liens (as defined below), and (9) valid, perfected and unavoidable liens permitted under the Junior Guild Documents to the extent such permitted liens are senior to or *pari passu* with the Pre-Petition Junior Guild Liens on the Pre-Petition Junior Guild Collateral under applicable non-bankruptcy law.

(c)         Nothing herein shall constitute a finding by the Court as to the relative seniority between any security interests on any Picture (on a Picture-by-Picture basis) held by the Pre-Petition First Priority Agent and/or the Pre-Petition Second Priority Agent, on one hand, and by any Guild, on the other hand, and all rights with respect to the foregoing are reserved.

4.        *Findings Regarding the DIP Facility.*

(a)              Good cause has been shown for the entry of this Order.

(b)              The Debtors have an immediate need to obtain the DIP Facility and to use Cash Collateral in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to pay post-petition residuals to certain unions, including the Guilds, to make capital expenditures and to satisfy other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations are vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)              The Debtors are unable to obtain post-petition financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Agent and to the DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens and the DIP Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and in the DIP Documents. The Debtors are unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code, from sources other than the DIP Agent and the DIP Lenders on terms more favorable than the terms of the DIP Facility.

(d)        The terms of the DIP Facility and the use of the Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)        The DIP Documents and the use of Cash Collateral have been the subject of extensive negotiations conducted in good faith and at arm's length between the Debtors, the DIP Agent and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facility and the DIP Documents, including without limitation, (i) advances made pursuant to the DIP Credit Agreement (the "DIP Loans"), and (ii) any Obligations (as defined in the DIP Credit Agreement), including credit extended in respect of overdrafts and related liabilities and other depository, treasury, cash management services and other clearing services provided by or to which JPMCB, other DIP Lenders, or their respective affiliates to the extent provided for in the DIP Documents (all of the foregoing in clauses (i) and (ii), collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections afforded by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)        The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Facility and the use of Cash Collateral in accordance with this Order and the DIP Documents is

therefore in the best interests of the Debtors' estates.  Accordingly, this Order shall immediately become effective upon its entry.

5.　　　　　*Authorization of the DIP Facility.*

(a)　　　　　The DIP Facility is hereby approved as set forth in this Order and the DIP Documents on a final basis.  The Debtors are hereby authorized to enter into the DIP Documents, including, without limitation, the DIP Credit Agreement.  The Borrower is hereby authorized to borrow money under the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty such borrowings up to an aggregate principal amount of $15 million (plus interest, fees and other reasonable expenses provided for in the DIP Documents), in accordance with the terms of this Order and the DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to provide working capital for the Debtors, to issue letters of credit, and to pay interest, fees and expenses in accordance with this Order and the DIP Documents.  In addition to such loans and obligations, the Debtors are authorized to incur overdrafts and related liabilities arising from treasury, depository and cash management services including any automated clearing house fund transfers provided to or for the benefit of the Debtors by JPMCB or any of the DIP Lenders or any of their respective affiliates; *provided*, *however*, that nothing herein shall require JPMCB or any other party to incur overdrafts or to provide any such services or functions to the Debtors.

(b)　　　　　INTENTIONALLY OMITTED

(c)　　　　　In furtherance of the foregoing and without further notice to or approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, account control agreements, financing statements

and copyright filings), and to pay all fees, that may be reasonably required or necessary or desirable for the Debtors' performance of its obligations under the DIP Facility, including, without limitation:

(i)        the execution and delivery of and performance under the DIP Documents,

(ii)        the execution and delivery of and performance under one or more amendments to the DIP Credit Agreement for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the DIP Facility (the "Commitments") among the DIP Lenders, in each case in such form as the Debtors, the DIP Agent and the DIP Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Credit Agreement that do not change the maturity of the extensions of credit thereunder or increase the total commitment or the rate of interest payable thereunder, provided that any such amendments shall, promptly after the effectiveness thereof, be filed on the Court's docket),

(iii)        the payment of the principal, interest, fees, expenses and other amounts described in the DIP Documents as the same shall become due and payable and without the need to obtain further Court approval,

(iv)        the non-refundable payment to the DIP Agent or to the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement (and in the separate letter agreements between them in connection with the DIP Facility) and such reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable fees and expenses of the professionals retained as provided for in the DIP Documents, and

(v)          the performance of all other acts required under or in connection with the DIP Documents.

(d)          Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Documents.  Subject to paragraph 14 below, no obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.          *DIP Superpriority Claims.*

(a)          Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims arising under the Bankruptcy Code, including, without limitation, under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "DIP Superpriority Claims"), which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the payment in full in cash of the Carve Out.  The DIP Superpriority Claims shall not be payable from or have recourse to any actual or potential claims or causes of action to avoid a transfer of property (or an interest in property) or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and section 724(a) of the

Bankruptcy Code (collectively, "<u>Avoiding Actions</u>"), but shall be payable from and have recourse to the proceeds and property recovered in connection with the prosecution or settlement of Avoiding Actions (the "<u>Avoiding Proceeds</u>").

(b)     For purposes of this Order, the "<u>Carve Out</u>" means (i) all fees required to be paid to the U.S. Trustee and to the Clerk of the Bankruptcy Court pursuant to section 1930(a) of title 28 of the United States Code; *plus* (ii) the fees and expenses of retained professionals of the Debtors employed pursuant to sections 327, 328, and 363 of the Bankruptcy Code (other than ordinary course professionals) that are incurred prior to the Carve-Out Trigger Date (as defined herein) (and including amounts incurred but not invoiced or approved prior to the Carve-Out Trigger Date) (but only to the extent that such fees and expenses are payable under sections 330 and 331 of the Bankruptcy Code and pursuant to an order of the Court), *plus* (iii) without duplication of the amounts described in clause (ii) above, the fees and expenses of such retained professionals to the Debtors, in the aggregate amount not to exceed $1,000,000, incurred after the Carve-Out Trigger Date (but only to the extent that such fees and expenses are payable under sections 330 and 331 of the Bankruptcy Code and pursuant to an order of the Court); *plus* (iv) fees and expenses, and expenses of committee members, of any retained professionals of any statutory committee appointed in the Cases (a "<u>Statutory Committee</u>") that are incurred prior to the Carve Out Trigger Date (including amounts incurred but not invoiced or approved prior to the Carve Out Trigger Date) (but only to the extent that such fees and expenses are payable under sections 330 and 331 of the Bankruptcy Code and pursuant to an order of the Court), *plus* (v) without duplication of the amounts described in clause (iv) above, the fees and expenses of such members of and retained professionals to the Statutory Committee, in an aggregate amount not to exceed $50,000, and invoiced and payable under sections 330 and 331 of the Bankruptcy

Code (but only to the extent that such fees and expenses and committee member expenses are payable pursuant to an order of the Court); *plus* (vi) reasonable fees and expenses of a trustee under Bankruptcy Code §726(b) in an amount not to exceed $75,000; *provided*, that any payment or reimbursement made either directly by the DIP Agent or any DIP Lender at any time, or by or on behalf of the Debtors, in respect of any professional fees, committee expenses described in clauses (ii) through (iv) above, shall permanently reduce the overall Carve Out and any applicable sub-limit under the Carve Out on a dollar-for-dollar basis; *provided, further*, that payments or reimbursements specified in clause (ii) and/or clause (iv) above shall not reduce, or be deemed to reduce, the amount of the Carve-Out specified in clause (iii) or (v) above; *provided, further*, that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in this paragraph 6(b). As used herein, "<u>Carve-Out Trigger Date</u>" shall mean the date on which the DIP Agent provides written notice to the Debtors and counsel to the Debtors, with a copy of such notice to counsel for any Statutory Committee (if appointed), that the Carve-Out is invoked, which notice shall be delivered only on or after and during the continuation of an Order Event of Default.

(c)     Subject to the terms and conditions of the DIP Documents and this Order, the Debtors shall be permitted to pay professional fees and expenses (including on an interim basis) as the same may become due and payable and in accordance with Bankruptcy Code §§330 and 331. Notwithstanding anything to the contrary contained in this Order or in any DIP Documents, the liens and claims granted to any of the agents or lenders (including, without limitation, the DIP Agent, the DIP Lenders, the Pre-Petition First Priority Agent, the Pre-Petition First Priority Lenders, the Pre-Petition Swap Counterparties, the Pre-Petition Second Priority Agent and the Pre-Petition Second Priority Lenders), any Guild or any other Pre-Petition Secured

Party under, pursuant to or in connection with, as applicable, the DIP Facility, any DIP Document, this Order, any Existing Agreement or applicable law, whether for adequate protection, postpetition financing or otherwise (including, without limitation, the DIP Obligations, the Pre-Petition Secured Debt, the Pre-Petition Guild Claims, the Adequate Protection Obligations and the Superpriority Claims), shall be subject and subordinate to the payment in full in cash of the Carve-Out.

(d)     At the DIP Agent's sole discretion, the DIP Agent may, at any time and in any increment up to the amount of the Carve Out, establish a reserve against the amount of DIP Loans or other credit accommodations (including a deduction from the borrowing base as provided under the DIP Credit Agreement) that would otherwise be made available to the Debtors pursuant to the lender formulae contained in the DIP Credit Agreement in respect of the Carve Out.

7.     *DIP Liens.*  As security for the DIP Obligations (including any indebtedness to JPMCB or any other DIP Lender or any of their respective affiliates arising from overdrafts and related liabilities arising from treasury, depository and cash management services and automated clearing house transfers, as set forth in the DIP Credit Agreement), effective and perfected upon the date of this Order and without the necessity of the execution or recordation of filings by the Debtors of mortgages, security agreements, account control agreements, pledge agreements, financing statements, copyright filings or other similar documents, the following security interests and liens (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "DIP Liens") are hereby granted to the DIP Agent for its own benefit and for the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below, subject to the terms of the DIP

Documents, being collectively referred to as the "Collateral"), which DIP Liens are subject to the Carve Out:

(a)        First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to a valid, perfected and non-avoidable lien under applicable non-bankruptcy law (collectively, "Unencumbered Property").  Unencumbered Property shall exclude any and all Avoiding Actions, but shall include the Avoiding Proceeds.

(b)        Liens Priming Pre-Petition Secured Parties' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon substantially all pre- and post-petition property of the Debtors, including, without limitation (i) cash, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, chattel paper, contracts, deposit accounts, properties, plants, fixtures and machinery and equipment, general intangibles, documents, instruments, owned real estate, real property leaseholds, (ii) patents, copyrights, Pictures, other film/motion picture rights (including, without limitation, any and all rights held by any Debtor (in each case whether produced by such Debtor or acquired by license or otherwise) in any completed motion pictures, any uncompleted motion picture products and any and all "library" assets of the Borrower and the other Guarantors), trademarks, trade names, rights under license agreements, other intellectual property, (iii) equity interests owned by the Borrower and the Guarantors (limited, in the case of equity interests in any Controlled Foreign Subsidiary (as defined in the DIP Credit Agreement) that is not a

DB1/66228078.1
NY\1749222.4                                      24

subsidiary of another Controlled Foreign Subsidiary, to 65% of the equity interests of such Controlled Foreign Subsidiary), and (iv) the proceeds of each of the foregoing, whether now existing or hereafter acquired, that is subject to the existing Pre-Petition Secured Parties' Liens (including in respect of issued but undrawn letters of credit under the Pre-Petition First Priority Credit Agreement). Such security interests and liens shall be senior in all respects to the interests in such property of the Pre-Petition Secured Parties arising from current and future liens of the Pre-Petition Secured Parties (including, without limitation, adequate protection liens granted hereunder) (the "Primed Liens"), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date (or perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code), to the extent that such liens are senior to the liens of the Pre-Petition Secured Parties and unavoidable under applicable non-bankruptcy law.

(c)        Liens Junior to Certain Other Liens. Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon all pre- and post-petition property of the Debtors, whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date (or perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code), but in each case other than the Primed Liens, which security interests and liens in favor of the DIP Agent are junior to such valid, perfected and unavoidable liens (the "Prior Liens").

(d)        Liens Senior to Certain Other Liens. The DIP Liens and the Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under

section 551 of the Bankruptcy Code, or (ii) any liens arising after the Petition Date (other than the Prior Liens or other adequate protection liens as expressly provided in this Order) including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

8.          *Protection of DIP Lenders' Rights; Modification of Automatic Stay.*

(a)          So long as there are any borrowings or other amounts outstanding under the DIP Credit Agreement, or the DIP Lenders have any Commitment (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, then the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, the Guilds and the other Pre-Petition Secured Parties shall (i) take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Existing Agreements or this Order, or otherwise exercise remedies against any Collateral, except to the extent authorized by a further order of this Court on notice, (ii) be deemed to have consented to any release of Collateral authorized under the DIP Documents, (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, account control agreements, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Collateral, unless, solely as to this clause (iii), as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date, and (iv) not seek to terminate or modify the use of Cash Collateral, obtain additional (or different) adequate protection beyond that which is set forth in this Order or seek to litigate or relitigate the priming of the Pre-Petition Secured Parties' liens and the grant of the Superpriority Claims granted by this Order; provided, however, that, except to the extent otherwise provided in the Credit Facilities Intercreditor Agreement, the applicable

Pre-Petition Secured Parties shall otherwise have the rights as creditors to file motions or take positions with respect to any motions or applications in the Court.

(b)     Upon any Debtor's breach of the terms, conditions or covenants or their obligations under this Order or the occurrence and continuation of an Event of Default (as defined in the DIP Credit Agreement) (an "Order Event of Default"), (i) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Order, the DIP Credit Agreement and the other DIP Documents, (ii) the Debtors shall cease to make any payment to any Guild pursuant to paragraph 11(d) hereof, and (iii) the DIP Agent shall be entitled to, at any time without further relief from the Court or notice to any party in interest in these Cases: (1) terminate the Total Commitment (as defined in the DIP Credit Agreement), (2) declare all DIP Obligations or any portion thereof immediately due and payable, accelerating the DIP Obligations, (3) require the Debtors to provide any other financial accommodations including the cash collateralization of letters of credit as set forth in the DIP Documents to or for the benefit of the Debtors, and (4) terminate, reduce or restrict the ability of the Debtors to use any Cash Collateral; *provided*, *however*, that, during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to pay payroll and other expenses critical to keep the business of the Debtors operating, in each case, so long as such expenses are in accordance with the Budget and the Baseline Cash Flow Projections (each as defined below), but may not disburse or withdraw any amounts from the Cash Collateral Account.

(c)     The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Agent and the DIP Lenders to perform any act authorized or permitted under or by virtue

of this Order, including without limitation, (i) to implement the post-petition financing arrangements authorized by this Order and pursuant to the terms of the DIP Documents, (ii) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, (iii) to access, charge, collect, set off, advance, deduct and receive payments with respect to the DIP Obligations, including, without limitation, all interest, fees, costs and expenses permitted under the DIP Documents, and apply such payments to the DIP Obligations pursuant to the DIP Documents and this Order, and (iv) upon and after the occurrence of an Order Event of Default, to permit the DIP Agent, at the sole cost and expense of the Debtors, to (1) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interest, warehouse arrangements or film laboratory storage arrangements owned or leased by the Debtors in accordance with applicable law, and (2) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors for the business; *provided*, that the DIP Agent and the DIP Lenders shall be responsible for the payment of any applicable fees, rentals, royalties, copying charges or other amounts due such lessor, licensor, laboratory or owner of such property for the period of time that the DIP Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the DIP Agent actually occupies or uses such assets or properties).

(d)     The automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that after the occurrence and during the continuation of an Order Event of Default, or an event that would constitute an Order Event of Default with the giving of notice or passage of time or both, and after providing five (5) business days prior notice (or,

solely in the context of events which do not yet but would with the passage of time constitute an Order Event of Default, after providing five (5) business days prior notice or, if longer, the remaining cure period under the DIP Credit Agreement prior to such event constituting an Order Event of Default) to counsel for the Debtors, counsel for any Statutory Committee (if appointed), counsel to the Guilds, counsel to the Pre-Petition Second Priority Agent and the United States Trustee (the "Remedies Notice Period"), the DIP Agent, acting on behalf of itself and the other DIP Lenders, shall, be entitled to take any action and exercise all rights and remedies provided to it by this Order (in addition to those described in sub-paragraph (b) above), the DIP Documents or applicable law, as the DIP Agent may deem appropriate in its sole discretion to, among other things, proceed to realize upon the Collateral (including, without limitation, the right to set off monies of the Debtors in accounts maintained with or otherwise held by the DIP Agent or any DIP Lender or their affiliates) or any other assets or properties of any Debtor's estate upon which the DIP Agent, for the benefit of itself and the other DIP Lenders, has been or may hereafter be granted liens or security interests, to obtain the full and indefeasible repayment of all DIP Obligations.  In any hearing during the Remedies Notice Period, the sole issue that may be raised by the Debtors or any Statutory Committee in opposition to the exercise of remedies pursuant hereto shall be whether, in fact, an Order Event of Default has occurred and is continuing, and no relief under section 105 of the Bankruptcy Code or otherwise may be sought by the Debtors or any Statutory Committee in opposition to any such exercise of remedies.  In no event shall the DIP Agent, the DIP Lenders, the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, the Guilds or the other Pre-Petition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.  For the avoidance of doubt, the Remedies Notice Period shall expire on the earliest of (i) cure or waiver of the

applicable Order Event of Default, (ii) payment in full in cash of the DIP Obligations and the termination of the Commitments (as defined in the DIP Credit Agreement), and (iii) five (5) business days after giving notice to counsel for the Debtors, counsel for any Statutory Committee (if appointed), counsel to the Guilds, counsel to the Pre-Petition Second Priority Agent and the United States Trustee of an Order Event of Default.

9.        *Cash Collateral.*  To the extent any funds were on deposit with any Pre-Petition Secured Party as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with any Pre-Petition Secured Party immediately prior to the Petition Date (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "Deposited Funds") are subject to rights of setoff by the applicable Pre-Petition Secured Party.  The Deposited Funds are subject to a lien in favor of such Pre-Petition Secured Parties pursuant to sections 506(a) and 553 of the Bankruptcy Code and are cash collateral under section 363(a) of the Bankruptcy Code. The Deposited Funds, any cash held in any account which was subject as of the Petition Date to an account control agreement in favor of any Pre-Petition Secured Party, and all proceeds of the Pre-Petition Collateral and Collateral are referred to herein as "Cash Collateral."

10.        *Use of Cash Collateral.*  The Debtors have provided the DIP Agent and the DIP Lenders with a forecast of the Debtors' anticipated cash receipts and disbursements and setting forth the anticipated uses of the DIP Facility for the period through the outside maturity thereof on a monthly basis in form and substance satisfactory to the DIP Agent (as may be modified in accordance with the DIP Credit Agreement, the "Budget"), and a cash flow schedule setting forth the Debtors' 13-week cash flow (the "Initial Cash Flow Projection"), a copy of which was attached to the Interim Order as Annex A, which Initial Cash Flow Projection shall be updated

by the Debtors on a weekly basis as required by and described in the DIP Credit Agreement, and which shall be satisfactory to the DIP Agent and its advisors in their sole discretion (the Initial Cash Flow Projections are, together with each set of updated cash flow projections which are delivered the fourth week after delivery of the prior Baseline Cash Flow Projections (as defined in the DIP Credit Agreement) referred to as the "Baseline Cash Flow Projections").  Subject to the terms and conditions of this Order, the Debtors are hereby authorized to use all Cash Collateral and other Collateral to make cash disbursements that are not materially inconsistent with the Budget and not materially inconsistent with the payments set forth on the most recent Baseline Cash Flow Projections (as further modified by the following sentence) for the period (the "Specified Period") beginning on the Petition Date and ending on the earlier of (a) the date a final order is entered denying the Motion, and (b) subject to paragraph 8 above, the occurrence and continuation of an Order Event of Default.  Except as otherwise expressly provided herein, during the Specified Period, the Debtors shall be authorized to use Cash Collateral as provided in the foregoing sentence, except that the Debtors shall not, without the written consent of DIP Lenders holding at least a majority of commitments under the DIP Facility (i) with respect to any line item or category which is reflected in the most recent Baseline Cash Flow Projections, make payments that as of the date of determination are in excess of 110% of the amount reflected on such Baseline Cash Flow Projections as being payable with respect to such line item or category through such date of determination; provided, that, subject always to the following clause (ii), (1) this clause (i) shall not limit the amount of payments of reasonable fees and expenses of the financial advisors and counsel to the DIP Agent or (so long as approved by the Court, and subject to the Carve Out) payment of fees and expenses of legal counsel to the Debtors, and (2) in the context of line items and categories reflected on such Baseline Cash Flow Projection of

DB1/66228078.1
NY\1749222.4

less than $50,000, the Debtors may pay amounts in excess of 110% of the scheduled payments so long as the total payment does not exceed $50,000, or (ii) permit their aggregate payments as of any date of determination to exceed 110% of the aggregate payments projected in the Baseline Cash Flow Projections to be paid through such date of determination. The authorization of the Debtors to use Cash Collateral shall terminate at the end of the Specified Period, other than as provided in Paragraph 8(b) above or by further order of the Court.

11.        *Adequate Protection.*

(a)        The Debtors have requested that the Pre-Petition Secured Parties consent to, among other things, (i) the Debtors' use of the Cash Collateral and the other Pre-Petition Collateral, and (ii) the incurrence of the DIP Facility and the Debtors' granting of priming liens in connection therewith. The Debtors acknowledge and stipulate that, subject to paragraph 14 below, the Pre-Petition Secured Parties are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, to the extent of any diminution in value of such interest in the Pre-Petition Collateral resulting from the sale, lease or use by the Debtors of Cash Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Secured Parties' security interests and liens in the Pre-Petition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

(b)        <u>Pre-Petition First Priority Creditors' Adequate Protection</u>. The obligations described in the following sub-paragraphs (i), (ii) and (iii) are referred to herein, collectively, as the "<u>First Priority Adequate Protection Obligations</u>":

(i)         <u>Adequate Protection Liens</u>.  As adequate protection, the Pre-Petition First Priority Agent (for its benefit and for the benefit of the other Pre-Petition First Priority Creditors) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution, filing or recordation by the Debtors of mortgages, security agreements, pledge agreements, financing statements, copyright filings, account control agreements or other agreements) a replacement security interest in and lien upon all the Collateral, subject and subordinate only to (A) the DIP Liens and the Prior Liens, (B) the Pre-Petition Senior Guild Liens on the Pre-Petition Senior Guild Collateral (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis)**,** (C) the Senior Guild Adequate Protection Liens (as defined below) on the Pre-Petition Senior Guild Collateral (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis), and (D) the Carve Out (the "<u>First Priority Adequate Protection Liens</u>");

(ii)         <u>Section 507(b) Claim</u>.  To the extent the First Priority Adequate Protection Liens are insufficient to provide adequate protection, the Pre-Petition First Priority Agent (for its benefit and for the benefit of the other Pre-Petition First Priority Creditors) is hereby granted, subject to the Carve Out, superpriority claims as provided for in section 507(b) of the Bankruptcy Code (the "<u>First Superpriority Claims</u>"), (x) *pari passu* with the Senior Guild Superpriority Claims, and (y) immediately junior to (A) the DIP Superpriority Claims, and (B) the Carve Out; *provided, however*, that the Pre-Petition First Priority Agent and the other Pre-Petition First Priority Creditors shall not receive or retain any payments, property or other amounts in respect of the First Superpriority Claims until the DIP Obligations and Carve Out have indefeasibly been paid in cash in full, and the DIP Lenders shall have no further commitment to lend under the DIP Credit Agreement.  The First Superpriority Claims shall not

be payable from or have recourse to the Avoiding Actions but shall be payable from and have recourse to the Avoiding Proceeds.

(iii)     <u>Fees and Expenses</u>. Subject to paragraph 11(f), the Pre-Petition First Priority Agent shall receive from the Debtors current cash payments of all reasonable out-of-pocket costs and expenses incurred by the Pre-Petition First Priority Agent, whether before or after the Petition Date, as provided in the Pre-Petition First Priority Credit Agreement, including, but not limited to, the reasonable fees and disbursements of counsel and other consultants for the Pre-Petition First Priority Agent, subject to the rights of the Debtors under section 506(b) of the Bankruptcy Code.  Upon entry of a final non-appealable order by the Court determining the Pre-Petition First Priority Agent (on behalf of the Pre-Petition First Priority Creditors) or any of the Pre-Petition First Priority Creditors to be undersecured or that such payment is not permitted under section 506(b) of the Bankruptcy Code, any payment of post-petition fees, costs or expenses to such party shall be reapplied or recharacterized as the Court so orders.  The Pre-Petition First Priority Agent and the Pre-Petition First Priority Creditors reserve their rights to assert claims for the payment of interest and additional fees and expenses provided for in the Pre-Petition First Priority Credit Agreement, without prejudice to the rights of any other party to contest such assertion.

(c)     <u>Pre-Petition Second Priority Creditors' Adequate Protection</u>.  The obligations set forth in the following sub-paragraphs (i), (ii) and (iii) are referred to herein, collectively, as the "<u>Second Priority Adequate Protection Obligations</u>":

(i)     <u>Adequate Protection Liens</u>.  As adequate protection, the Pre-Petition Second Priority Agent for its benefit and for the benefit of the Pre-Petition Second Priority Lenders is hereby granted (effective and perfected upon the date of this Order and

without the necessity of the execution, filing or recordation by the Debtors of mortgages, security agreements, pledge agreements, financing statements, copyright filings or other agreements) a replacement security interest in and lien upon all the Collateral (the "Second Priority Adequate Protection Liens"), subject and subordinate only to (A) the DIP Liens and the Prior Liens, (B) the Pre-Petition Senior Guild Liens on the applicable Pre-Petition Senior Guild Collateral (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis), (C) the Senior Guild Adequate Protection Liens on the applicable Pre-Petition Senior Guild Collateral (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis), (D) the Pre-Petition First Priority Liens, (E) the First Priority Adequate Protection Liens, and (F) the Carve Out; and

(ii)         Section 507(b) Claim.  To the extent the Second Priority Adequate Protection Liens are insufficient to provide adequate protection, the Pre-Petition Second Priority Agent (for its benefit and for the benefit of the Pre-Petition Second Priority Lenders) is hereby granted, subject to the Carve Out, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code (the "Second Superpriority Claims"), (x) *pari passu* with the Senior Guild Superpriority Claims and (y) immediately junior to (A) the DIP Superpriority Claims, (B) the First Superpriority Claims and (C) the Carve Out; *provided, however*, that none of the Pre-Petition Second Priority Agent and the other Pre-Petition Second Priority Creditors shall receive or retain any payments, property or other amounts in respect of the Second Superpriority Claims unless and until the DIP Obligations, the First Superpriority Claims, the Pre-Petition First Priority Secured Debt and the Carve Out have indefeasibly been paid in cash in full and the DIP Lenders shall have no further commitment to lend under the DIP Credit Agreement.  The Second Superpriority Claims shall not be payable from or have recourse to the Avoiding Actions but shall, subject to (x) the proviso contained in the first sentence of this subparagraph, and (y) the

priorities set forth in the first sentence of this subparagraph, be payable from and have recourse to the Avoiding Proceeds; and

(iii)        <u>Fees and Expenses</u>.  Subject to paragraph 11(f), the Pre-Petition Second Priority Creditors shall receive from the Debtors current cash payments of all reasonable out-of-pocket costs and expenses incurred by the Pre-Petition Second Priority Agent and the other Pre-Petition Second Priority Creditors, whether before or after the Petition Date, as provided in the Pre-Petition Second Priority Documents, including, but not limited to, the reasonable fees and disbursements of counsel and other consultants for the Pre-Petition Second Priority Agent and the other Pre-Petition Second Priority Creditors, not to exceed $250,000 in the aggregate (which amount shall be in addition to any amounts previously paid by the Debtors or for which the Debtors have received an invoice prior to September 28, 2010), and subject to the rights of the Debtors under Section 506(b) of the Bankruptcy Code.  Upon entry of a final non-appealable order by the Court determining the Pre-Petition Second Priority Agent (on behalf of the Pre-Petition Second Priority Creditors) or any of the Pre-Petition Second Priority Creditors to be undersecured or that such payment is not permitted under section 506(b) of the Bankruptcy Code, any payment of post-petition fees, costs or expenses to such party shall be reapplied or recharacterized as the Court so orders.  The Pre-Petition Second Priority Agent and the Pre-Petition Second Priority Creditors reserve their rights to assert claims for the payment of interest and additional fees and expenses provided for in the Pre-Petition Second Priority Credit Agreement, without prejudice to the rights of any other party to contest such assertion.

(d)        <u>Guilds' Adequate Protection</u>.  The obligations set forth in the following sub-paragraphs (i) through (iii) are referred to herein, collectively, as the "<u>Guild Adequate Protection Obligations</u>" and, together with the First Priority Adequate Protection Obligations,

and the Second Priority Adequate Protection Obligations, the "Adequate Protection Obligations"):

        (i)        <u>Adequate Protection Liens</u>.

        (1)        As adequate protection, each Guild holding senior Pre-Petition Guild Claims, for its own benefit and not for the benefit of any other Guild, is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors or filing of security agreements, financing statements, copyright filings or other agreements) a replacement security interest in and lien upon any Picture (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis) in which it holds a Pre-Petition Senior Guild Lien up to the amount of its pre-petition claim against such Picture (each such lien, a "<u>Senior Guild Adequate Protection Lien</u>"), subject and subordinate only to (I) the DIP Liens and the Prior Liens and (II) the Carve Out;

        (2)        As adequate protection, each Guild holding junior Pre-Petition Guild Claims for its own benefit and not for the benefit of any other Guild, is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors or filing of security agreements, financing statements, copyright filings or other agreements) a replacement security interest in and lien upon any Picture (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis) in which it holds a Pre-Petition Junior Guild Lien up to the amount of its pre-petition claim against such Picture (each such lien, a "<u>Junior Guild Adequate Protection Lien</u>" and, together with the Senior Guild Adequate Protection Liens, the "<u>Guild Adequate Protection Liens</u>" and, together with the First Priority Adequate Protection Liens and the Second Priority Adequate Protection Liens, the "<u>Adequate Protection Liens</u>"), subject and subordinate only to (I) the DIP Liens and the Prior Liens, (II) the

Carve Out, (III) the Senior Guild Pre-Petition Liens on the applicable Pre-Petition Senior Guild Collateral (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis), (IV) the Senior Guild Adequate Protection Liens on the applicable Pre-Petition Senior Guild Collateral (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis), (V) the Pre-Petition First Priority Liens, (VI) the First Priority Adequate Protection Liens, (VII) the Pre-Petition Second Priority Liens and (VIII) the Second Priority Adequate Protection Liens.

(ii)        Section 507(b) Claim.  (A) To the extent a Senior Guild Adequate Protection Lien is insufficient to provide adequate protection, the Guild holding such Senior Guild Adequate Protection Lien is hereby granted, subject to the Carve Out, (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis), a superpriority claim as provided for in section 507(b) of the Bankruptcy Code (collectively, the "Senior Guild Superpriority Claims"), (x) *pari passu* with the First Superpriority Claims and the Second Superpriority Claims, and (y) immediately junior to the DIP Superpriority Claims and the Carve Out and (B) to the extent a Junior Guild Adequate Protection Lien is insufficient to provide adequate protection, the Guild holding such Pre-Petition Junior Guild Lien is hereby granted, subject to the Carve Out, (solely on an uncrossed, single-Picture, Picture-by-Picture, Guild-by-Guild basis), a superpriority claim as provided for in section 507(b) of the Bankruptcy Code (collectively, the "Junior Guild Superpriority Claims" and, together with the Senior Guild Superpriority Claims, the "Guild Superpriority Claims" and, together with the DIP Superpriority Claims, the First Superpriority Claims and the Second Superpriority Claims, the "Superpriority Claims"), immediately junior to (I) the DIP Superpriority Claims, (II) the Senior Guild Superpriority Claims, (III) the First Superpriority Claims, (IV) the Second Superpriority Claims and (V) the Carve Out; *provided, however*, that none of the Guilds shall receive or retain any

DB1/66228078.1
NY\1749222.4

payments, property or other amounts (a) in respect of the Senior Guild Superpriority Claims unless and until the DIP Obligations and the Carve Out have indefeasibly been paid in cash in full and the DIP Lenders shall have no further commitment to lend under the DIP Credit Agreement and otherwise in accordance with the priorities set forth in this Order, and (b) in respect of the Junior Guild Superpriority Claims, unless and until the DIP Obligations, the Carve Out, the Senior Guild Superpriority Claims, the First Superpriority Claims and the Second Superpriority Claims have indefeasibly been paid in cash in full and the DIP Lenders shall have no further commitment to lend under the DIP Credit Agreement and otherwise in accordance with the priorities set forth in this Order. The Guild Superpriority Claims shall not be payable from or have recourse to the Avoiding Actions but shall, subject to (x) the proviso contained in the first sentence of this subparagraph and (y) the priorities set forth in the first sentence of this subparagraph, be payable from and have recourse to the Avoiding Proceeds.

(iii) As additional adequate protection, provided that no Order Event of Default has occurred and is continuing, (i) to the extent any residuals accrue on any Picture after the Petition Date, the Debtors shall pay to the applicable Guild(s), solely from the cash proceeds of such Picture received by the Debtors after the Petition Date, such Guild's percentage entitlement to a portion of such cash proceeds, solely on a current, uncrossed, single-Picture, Picture-by-Picture, union by union basis, and (ii) the Debtors shall direct that any checks issued by the Debtors prior to the Petition Date, which represent accrued residuals on any Picture and which remain uncashed as of the Petition Date shall be honored by the applicable bank or the Debtors will reissue such checks after the Petition Date.

(e) Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection

provided herein is reasonable and sufficient to protect the interests of the Pre-Petition Secured Parties.

(f)        With respect to the reimbursement of the reasonable fees and expenses of the DIP Agent, the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, the Pre-Petition Second Priority Creditors and their respective professionals, the Debtors shall promptly reimburse such amounts without the necessity of filing motions or fee applications within ten (10) business days after such party or professional has delivered a summary invoice to the Debtors.

12.        *Perfection of DIP Liens and Adequate Protection Liens.*

(a)        Subject to the provisions of paragraph 8(a) above, the DIP Agent, the DIP Lenders, the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, the Guilds and the other Pre-Petition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, account control agreements, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent on behalf of the DIP Lenders, the Pre-Petition First Priority Agent on behalf of the Pre-Petition First Priority Creditors, the Pre-Petition Second Priority Agent on behalf of the Pre-Petition Second Priority Creditors or any Guild shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, account control agreements, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge (other than as provided in paragraph 14 below), dispute or subordination (except as provided in this

Order), at the time and on the date of entry of this Order. If any Pre-Petition Secured Party elects to file such financing statements, trademark filings, copyright filings, mortgages, account control agreements, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such Pre-Petition Secured Party shall bear all costs related to such filing and shall not be entitled to seek reimbursement of such costs from the Debtors. Upon the request of the DIP Agent, each of the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, the Guilds and the other Pre-Petition Secured Parties, without any further consent of any party, is authorized and directed to take, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens.

(b)          A certified copy of this Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices or with depository institutions in addition to or in lieu of such financing statements, copyright filing, mortgages, account control agreements, notices of lien or similar instruments, and all filing offices and depository institutions are hereby authorized to accept such certified copy of this Order for filing and recording and for the creation of "control" under applicable non-bankruptcy law.

13.          *Preservation of Rights Granted Under the Order.*

(a)          Except as otherwise provided in this Order or in the DIP Documents, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to the DIP Agent and the DIP Lenders, or to the Pre-Petition First Priority Creditors, or to the Pre-Petition Second Priority Creditors, or to the Guilds, respectively, shall be granted or allowed while any portion of the DIP Facility or the Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate

Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)        Unless all DIP Obligations and Adequate Protection Obligations shall have been paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default (as defined in the DIP Credit Agreement) and a termination of the right to use Cash Collateral if any of the Debtors seek, or if there is entered, (i) any modifications of this Order without the prior written consent of the DIP Agent, or with respect to their respective rights and benefits, the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent or the Guilds and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent, the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent or the Guilds, or (ii) an order dismissing or converting any of the Cases or appointing a trustee or examiner with expanded powers.  If an order dismissing or converting any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, (i) such order shall not alter or impair the Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Agent and, as applicable, the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, the Guilds or the other Pre-Petition Secured Parties pursuant to this Order, which shall continue in full force and effect and shall maintain their respective priorities as provided in this Order until all DIP Obligations shall have been paid and satisfied in full in cash and the Adequate Protection Obligations shall have been paid and satisfied in full in cash (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest),

and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (i) above.

(c)   Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims and all other rights and remedies of the DIP Agent and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under Chapter 7, dismissing any of the Cases, appointing a trustee or examiner with expanded powers, or terminating the joint administration of these Cases, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding Chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims and all other rights and remedies of the DIP Agent and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

14.   *Effect of Stipulations on Third Parties.*  The stipulations and admissions contained in this Order, with respect to the Pre-Petition Secured Debt and the liens in respect thereof including, without limitation, in paragraph 3 of this Order, shall be binding upon the Debtors in all circumstances and upon all other parties in interest in the Cases, including, without limitation, any Statutory Committee, unless and to the extent (a) (i) any Statutory Committee has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 15) by no later than the date that is the earlier of (x) sixty (60)

days after the initial selection of counsel by any Official Committee of Unsecured Creditors appointed in the Cases, or (y) the date on which an order is entered confirming the Joint Prepackaged Plan of Reorganization of RHI Entertainment Inc. and Affiliated Debtors (or such later date as the Court may order for "cause shown" or that has been agreed to, in writing, in the case of the Pre-Petition First Priority Secured Debt, by the Pre-Petition First Priority Agent, in the case of the Pre-Petition Second Priority Secured Debt, the Pre-Petition Second Priority Agent, and, in the case of the Pre-Petition Guild Claims Claims, the applicable Guilds, in each case, in their or its sole discretion), challenging the validity, enforceability, priority or extent of any of the Pre-Petition Secured Debt, the Pre-Petition Guild Claims or the Pre-Petition First Priority Creditors' or the Pre-Petition Second Priority Creditors' liens on the Pre-Petition Collateral, the Pre-Petition Senior Guild Liens or the Pre-Petition Junior Guild Liens (each, a "Challenge"), or (ii) if no Statutory Committee is appointed, any party in interest, by no later than the date that is forty-five (45) days after the Petition Date (or such later date as has been agreed to, in writing, in the case of the Pre-Petition First Priority Secured Debt, by the Pre-Petition First Priority Agent, in the case of the Pre-Petition Second Priority Secured Debt, the Pre-Petition Second Priority Agent, and, in the case of the Pre-Petition Senior Guild Debt and Pre-Petition Junior Guild Debt, by the applicable Guilds, in each case, in their or its sole discretion), files any Challenge, and (b) there is a final order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter.  If no such Challenge is timely filed, (x) the Pre-Petition Secured Debt shall constitute allowed claims, not subject to counterclaim, setoff, subordination (other than as provided in this Order), recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent Chapter 7 cases, (y) the liens of the Pre-Petition First Priority Creditors, the Pre-Petition Second

Priority Creditors and the Guilds on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, (except as provided in the Credit Facilities Intercreditor Agreement or this Order) subordination or avoidance, and (z) the Pre-Petition Secured Debt, the Pre-Petition Guild Claims, the Pre-Petition First Priority Creditors' and the Pre-Petition Second Priority Creditors' liens on the Pre-Petition Collateral, the Pre-Petition Junior Guild Liens and the Pre-Petition Senior Guild Liens and the findings contained in paragraph 3 hereof shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any Chapter 7 or 11 trustee appointed or elected for any of the Debtors).

15.     *Limitation on Use of DIP Facility Proceeds and Collateral.*  Notwithstanding anything herein or in any other order of this Court to the contrary, no borrowings, Cash Collateral, Collateral or the Carve Out may be used to (a) object to, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, or the Existing Agreements, or the liens or claims granted under this Order, the DIP Documents or the Existing Agreements, (b) assert any claims or defenses or causes of action against the DIP Agent, the DIP Lenders, the Pre-Petition First Priority Creditors, the Pre-Petition Second Priority Creditors, the Guilds or their respective agents, affiliates, representatives, attorneys or advisors, (c) materially prevent or otherwise delay the DIP Agent's enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Pre-Petition First Priority Creditors, the Pre-Petition Second Priority Creditors, or the Guilds under the DIP Documents or the Existing Agreements, in each of the foregoing cases without such

parties' prior written consent, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are provided for in this Order or approved by an Order of this Court, provided, that nothing in this paragraph 15 shall be construed to limit any investigation of the matters described therein.

16. *Order Governs.*  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

17. *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, the Guilds, the other Pre-Petition Secured Parties, any Statutory Committee appointed in these Cases and the Debtors and their respective successors and assigns (including any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, the Guilds, the other Pre-Petition Secured Parties and the Debtors and their respective successors and assigns.

18. *Limits on DIP Lenders' Liability.*  Nothing in this Order or in any of the DIP Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or the DIP Lenders any liability for any claims arising from the pre-petition or post-petition activities of the Debtors or their Affiliates (as defined in the DIP Credit Agreement) in the operation of their businesses, or in connection with their restructuring efforts.

DB1/66228078.1
NY\1749222.4

19.        *Indemnification.*  The Debtors shall indemnify and hold harmless the DIP Agent, the DIP Lenders and their respective shareholders, directors, agents, officers, subsidiaries, affiliates, successors, assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, and costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Documents, or the DIP Facility or the transactions contemplated thereby and in this Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Documents and further described therein and herein, except to the extent resulting from such indemnified party's gross negligence or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction.  This indemnity includes indemnification for the DIP Agent's and any DIP Lender's exercise of discretionary rights granted under the DIP Facility.  In all such litigation, or the preparation therefor, the DIP Agent and the DIP Lenders shall be entitled to select their own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

20.        *Proofs of Claim.*  The DIP Agent, the DIP Lenders, the Pre-Petition First Priority Agent, the Pre-Petition First Priority Lenders, the Pre-Petition Swap Counterparties, the Pre-Petition Second Priority Agent, the Pre-Petition Second Priority Lenders and the Guilds (in their capacities as such) will not be required to file proofs of claim in any of the Cases for any claim allowed in this Order; provided, however, that the Guilds shall be required to file proofs of claim for any claims not addressed in that certain Final Term Sheet, dated August 27, 2010, among the Borrower, the Directors' Guild of America, Inc., the Screen Actors' Guild, Inc. and the Writers'

Guild of America West, Inc. (on behalf of itself and the Writers' Guild of America East, Inc.) (the "Guild Settlement Agreement").  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases to the contrary, each of (a) the Pre-Petition First Priority Agent on behalf of itself and the other Pre-Petition First Priority Creditors, (b) the Pre-Petition Second Priority Agent on behalf of itself and the other Pre-Petition Second Priority Creditors (in their respective capacities as such), and (c) each of the Guilds is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases for any claim allowed herein.  Any proof of claim filed by the Pre-Petition First Priority Agent or Pre-Petition Second Priority Agent (in their respective capacities as such) shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition First Priority Creditors or any of the Pre-Petition Second Priority Creditors, respectively.  Any order entered by the Court in relation to the establishment of a bar date in any of the Cases shall not apply to the DIP Agent, DIP Lenders, the Pre-Petition First Priority Agent, the Pre-Petition First Priority Lenders, the Pre-Petition Swap Counterparties, the Pre-Petition Second Priority Agent, the Pre-Petition Second Priority Lenders or the Guilds (in their respective capacities as such) as to any claim allowed in this Order; provided, however, that the Guilds shall be subject to such orders to the extent they have claims not addressed pursuant to the Guild Settlement Agreement.

21.        *Guild Settlement Agreement.*  Notwithstanding anything to the contrary set forth herein, (i) the Guilds may take any and all actions to protect their interests in the event that the Debtors and/or the Pre-Petition First Priority Creditors propose a plan which is inconsistent with and does not seek approval of all terms of the Guild Settlement Agreement, and (ii) any residuals accrued on any Picture after the Petition Date, on a current, uncrossed, single-Picture, Picture by

Picture, Guild by Guild, union by union basis, shall be paid by the Debtors as administrative expenses.

22.         *US Bank and MAT IV.*  Notwithstanding any provision of this Order or the DIP Documents to the contrary, nothing in this Order or the DIP Documents shall create liens (including, without limitation, liens permitted to attach under section 552 of the Bankruptcy Code) senior to or *pari passu* with the valid, perfected, unavoidable liens in existence as of the Petition Date (or arising after the Petition Date pursuant to section 552 of the Bankruptcy Code) in favor of US Bank National Association ("USBNA") or MAT Movies & Television Productions GmbH & Co. Project IV KG ("MAT IV") in property of the estate.  This order is without prejudice to any challenge by any person to the existence, priority, amount, perfection or setoffs against any such liens in favor of USBNA or MAT IV.  Pending further order of the Court, as adequate protection for any liens in favor of USBNA, the Debtors shall segregate all cash collateral with regard to the films set forth on Schedule 1 attached hereto, as to which films USBNA asserts a lien.  Pending further order of the Court, as adequate protection for any such liens in favor of MAT IV, the Debtors shall segregate all cash collateral with regard to the films set forth on Schedule 2 attached hereto (the "Schedule 2 Films"), as to which films MAT IV asserts both a lien and ownership interest, in that certain bank account maintained at JPMCB pursuant to that certain Intercreditor Agreement and Deposit Account and Cash Collateral Control Agreement, dated as of June 24, 2002 (as amended or modified from time to time, the "MAT IV Control Agreement"), among JPMCB, MAT IV and RHI Distribution.  The Debtors are authorized and directed to provide an accounting to USBNA and MAT IV of any amounts held or received by the Debtors as of and after the Petition Date with regard to the films set forth on Schedule 1 and Schedule 2, respectively.  To the extent that the foregoing is insufficient to

provide adequate protection to USBNA or MAT IV (to which the rights and objections of all parties are reserved), USBNA and MAT IV are hereby granted, subject to the Carve Out, superpriority claims as provided for in section 507(b) of the Bankruptcy Code. Notwithstanding anything to the contrary in (i) the MAT IV Control Agreement, and (ii) that certain letter, dated December 13, 2010, from MAT IV to JPMCB, JPMCB shall hold all funds on deposit or collected in the future in the Collection Accounts (as defined in the MAT IV Control Agreement) with respect to the Schedule 2 Films and shall not permit any disbursements, transfers or sweeps from any of the Collection Accounts by either any Debtor or MAT IV except pursuant to further order of the Court; provided, however, that funds not constituting proceeds of Schedule 2 Films which are inadvertently deposited into the Collection Accounts may be transferred from the Collection Accounts at the request of the Debtors and with the consent of MAT IV or further order of the Court. Nothing herein shall determine the ownership of the Schedule 2 Films and nothing shall prejudice the rights of MAT IV and the Debtors to argue that the Schedule 2 Films are their respective property. Accordingly, the rights of all parties are reserved.

23.        *Limited Forbearance*.  In exchange for receiving the adequate protection provided in this Order, each of the Pre-Petition First Priority Agent, the Pre-Petition Second Priority Agent, the Guilds, and the other Pre-Petition Secured Parties agree to and shall forbear from exercising any and all rights and remedies under the Existing Agreements and applicable law against any non-debtor subsidiary or affiliate of any Debtor; provided that such forbearance shall terminate upon the expiration of the Remedies Notice Period following the occurrence and continuation of an Order Event of Default.

24.        *Retention of Jurisdiction*.  The Court has and will retain jurisdiction to enforce this Order according to its terms.

Dated: January 11, 2011
      New York, New York

                                                       **/s/ STUART M. BERNSTEIN**
                                                     United States Bankruptcy Judge

## <u>Schedule I</u>

"Shark Swarm"
"Megastorm" (aka "The Storm")
"The Phantom"
"Alien Western" (aka "High Plains Invaders")
"Carny"
"Rise of the Gargoyles"
"Hellhounds"
"Killer Bees" (aka "Black Swarm")
"Last Templar"
"Sand Serpent"
"Swamp Devil"
"They're Among Us"  (aka "Infected")
"Day of the Triffids"
"Ice"
"Dragonsteel"

## Schedule 2

| MAT IV's Motion Picture and Various Television Programming |
| --- |
| 10.5 |
| ANGEL IN THE FAMILY |
| ANNIE'S POINT |
| AUDREY'S RAIN |
| BACK TO YOU AND ME |
| BOYFRIEND FOR CHRISTMAS |
| CAROL CHRISTMAS |
| CATEGORY 6: DAY OF DESTRUCTION |
| 26 |
| A FAMILY PLAN |
| FIELDER'S CHOICE |
| HARD GROUND |
| HERCULES |
| HOLLYWOOD MOM'S MURDER MYSTERY |
| JUST DESSERTS |
| LIFE ON LIBERTY STREET |
| LION IN WINTER |
| LONG SHOT |
| MONSTER MAKERS |
| MURDER WITHOUT CONVICTION |
| MYSTERY WOMAN 1 |
| MYSTERY WOMAN 2 |
| MYSTERY WOMAN 3 |
| MYSTERY WOMAN 4 |
| MYSTERY WOMAN |
| ORDINARY MIRACLES |
| OUT OF THE WOODS |
| A PLACE CALLED HOME |
| READING ROOM |
| REVERSIBLE ERRORS |
| SINGLE SANTA MEETS MRS. CLAUS |
| THICKER THAN WATER |
| A TIME TO REMEMBER |
| TRAIL TO HOPE ROSE |
| WEDDING DAZE |
| FAMILY OF STRANGERS |

DB1/66228078.1
NY\1749222.4